**CHAMBERS STEEL ENGRAVING CORPORATION, Plaintiff, Appellant,**

v.

**TAMBRANDS, INC., Defendant, Appellee.**

No. 89–1714.

United States Court of Appeals, First Circuit.

Heard Feb. 9, 1990.

Decided Feb. 9, 1990.

Alice E. Zaft, with whom Barbara J. Sweeney and Cooley, Shrair, Alpert, Labovitz & Dambrov, P.C., were on brief for plaintiff, appellant.

James Sicilian, with whom Alan T. Levesque and Day, Berry & Howard, were on brief for defendant, appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Chambers Steel Engraving Corporation appeals from a decision of the United States District Court for the District of Massachusetts granting summary judgment to Tambrands Inc., in this diversity-based breach of contract action. For reasons stated below, we affirm.

FACTS

In September 1983, representatives of Chambers met with Tambrands' officials to discuss the design, development and production of a special embossing machine and embossing rolls for use in producing feminine hygiene products. These discussions continued until December 21, 1983, when Chambers' general manager, George Zwerver, traveled to Auburn, Maine to inspect Tambrands' machinery. Chambers alleges that, at this time, it entered into an oral contract with Tambrands to design, develop and produce both a prototype unit and 20 to 30 embossing machines. Tambrands denies that any contract was made to purchase more than one prototype with accompanying embossing rolls.

Tambrands' vice president, William Watt, in a December 27, 1983 letter to Zwerver, referred to the project in two parts: the "design of the machine" and the "design and manufacture of the embossing rolls." In that letter, the machine was discussed only in singular terms. The letter assigns to the John Verduin Machine Corp. the responsibility of designing and manufacturing the machine elements, but the overall responsibility for the project remained with Chambers. The letter also discussed some engineering details.

On January 12, 1984, Watt sent Zwerver a record of the December 21st meeting. This record included a detailed statement of the project's engineering requirements, and referred to an understanding that Ver-

duin would submit a rough design by mid-January.

On January 24, 1984, Zwerver sent Watt a letter quoting $15,000 for one embossing machine, together with fourteen embossing rolls. The letter also stated that "[p]er your verbal instructions, I have issued a purchase order to J. Verduin Machine Co. to proceed with this project."

Watt received a letter from Zwerver in August, 1984 containing a quote that the cost of design of the embossing machine would not exceed $3700. On September 26, 1984, Zwerver sent Watt a detailed letter as a quote on "two embossing roll combinations and machines...."

A letter dated September 28, 1984 from Zwerver to Watt marks the beginning of the breakdown of the relationship between the parties. In that letter, Zwerver expressed confusion about the appellee's objections to an additional $5000 charge for detailed engineering specifications. He also referred to "the current uncertainty relating to the status of the machine orders" which caused him to suspend efforts in relation to the project.

Further efforts to resurrect the project were unsuccessful. A letter from Chambers' vice president Norman Shapiro dated October 31, 1984, contained a revised quotation for the embossing machines. Because of this moribund relationship, Tambrands eventually retained another company to manufacture the machines. Tambrands paid Chambers' bills for the work on the prototype machine in full. Testimony of Zwerver and Shapiro indicates that Chambers' price for the prototype included a profit. Neither party objected to the above rendition of facts when reported by the magistrate.

The Massachusetts Statute of Frauds, Mass.Gen.L. ch. 106, § 2–201 states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale had been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Section 2–201(3)(a) sets forth an exception to this rule "if the goods are to be specially manufactured for the buyer ... and the seller, before notice of repudiation is received ... has made a substantial beginning of their manufacture or commitments for their procurement...."

Chambers essentially argues that it contracted to produce not only a prototype with rolls, but also twenty to thirty embossing units. Chambers contends that the creation of a specifically manufactured embossing machine prototype for Tambrands constitutes the "substantial beginning" of production of the machine under an oral contract for 20 to 30 machines and thus meets the statute of frauds exception under Mass.Gen.L. ch. 106, § 2–201(3)(a). Chambers also argues that the determination of whether there is a substantial beginning to the completion of an oral contract is a question of fact to be determined by a jury. It avers that, by granting Tambrands summary judgment when facts were in issue, the district court abused its discretion. In the alternative, Chambers contends that the district court erred in applying the law to the facts before it. Lastly, Chambers asserts that Tambrands' conduct amounts to unfair and deceptive trade practices in violation of Mass.Gen.L. ch. 93A.

Tambrands argues that there was no oral agreement and that the completion of the prototype constituted complete performance of a distinct contract for the prototype. It avers that none of the writings between the parties is sufficient under the Statute of Frauds to constitute a contract for anything more than a single prototype. It contends that since Chambers relied upon undisputed facts to support its claims, all that remained was for the district court to determine what constitutes a substantial beginning to an alleged oral contract. Finally, Tambrands argues that, since Chambers relies on the contract claim as basis for the ch. 93A claim, disposition of the contract claim in Tambrands' favor eliminates the ch. 93A claim. We agree with

Tambrands and the district court's analysis below.

## SUMMARY JUDGMENT STANDARD

Upon a motion for summary judgment, the district court must view all facts and reasonable inferences that may be drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 804 (1st Cir.1987); *Computer Systems of America v. International Business Machines Corp.*, 795 F.2d 1086, 1088 (1st Cir. 1986). Thus, in the case at bar, the district court was correct in assuming that an oral contract existed for purposes of deciding the summary judgment motion. But, even with this assumption, when Tambrands discharged its burden of demonstrating that no genuine issue of fact existed, the district court had discretion to grant the summary judgment motion as a matter of law. Fed. R.Civ.P. 56(c). Furthermore, the party opposing the summary judgment motion "may not rest upon mere allegations" but must "set forth specific facts showing that there is a genuine issue for trial." *Herbert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1106 (1st Cir.1989) (citing *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988)). "[W]hen the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2725 at 85 (1983).

## DISCUSSION

■ Chambers confuses the functions of the judge and the jury, by asking the jury to decide a legal question. But, whether the undisputed facts satisfy the requirements of the specially manufactured goods exception to the Statute of Frauds, is a question of law. *See Newton Const. Co. v. West & South Water Supply Dist.*, 326 Mass. 171, 93 N.E.2d 457, 461 (1950); *Stissi v. Interstate and Ocean Transport*, 765 F.2d 370, 374 (2d Cir.1985). *See also U.S.*

*v. Articles of Drug: 5906 Boxes*, 745 F.2d 105, 114 (1st Cir.1984).

■ The district court held that designing, developing and manufacturing a prototype did not constitute a substantial beginning to an alleged oral contract to manufacture twenty to thirty embossing machines. A paucity of decisional law in this area directed the district court's reliance on *Epprecht v. IBM Corp.*, 36 U.C.C.Rep.Ser. 391 (E.D.Pa. May 25, 1983).[1] Like Chambers, the *Epprecht* plaintiff relied on U.C.C. Section 2–201(3)(a), claiming that delivery of seven thousand printhead assemblies under written purchase orders constituted a substantial beginning to an oral contract for the manufacture of fifty thousand more assemblies. The *Epprecht* court granted summary judgment to the defendant, construing the specifically manufactured goods exception to the statute of frauds narrowly. That court based its decision on policy grounds, fearing abuse by parties attempting to add further quantities or other related agreements, onto an established contract which arguably could be said to constitute a substantial beginning of an alleged oral agreement.

Using the *Epprecht* decision as guidance, the district court cautiously held:

[w]hile the Court would not go so far as to say that in all situations the only conduct which could constitute the substantial beginning of manufacture is the actual production of the unit or units, in this case the Court concludes that the simple completion of the prototype is not enough to constitute the substantial beginning of the claimed contract.

Chambers presented no evidence of the beginning of production of any units other than the prototype. Furthermore, the only performance Chambers engaged in was the design, development and manufacture of the prototype for which it was paid in full. Furthermore, affidavits presented by Chambers indicated that it made a profit on the prototype. We agree with the district

---

**1.** Chambers makes arguments based on Massachusetts case law that Massachusetts applies a more liberal reading to the statute of frauds than Pennsylvania. These arguments are gener-

al and unavailing especially in the face of the apposite *Epprecht* decision and the district court's poignant application of it.

court that this is not enough to constitute a substantial beginning of the putative oral contract.

Therefore, the alleged oral contract for twenty to thirty embossing machines falls under the statute of frauds and is therefore unenforceable without a writing. Furthermore, this disposition of the contract claim renders the chapter 93A claim baseless. The mere breach of a contract, without more, even if one existed, would not violate ch. 93A. *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 18 (1st Cir.1985) (citing *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 390 N.E.2d 243 (1979)).

*Affirmed.*