**Earl RONEKER, Plaintiff,**

v.

**KENWORTH TRUCK COMPANY and Detroit Diesel Corp., Defendants.**

**No. 95–CV–125H.**

United States District Court,
W.D. New York.

Aug. 20, 1997.

---

Charles J. Marchese, Gleichenhaus, Marchese & Falcone, P.C., Buffalo, NY, for Plaintiff.

Michael J. Russo, Damon & Morey, L.L.P., Buffalo, NY, for Defendant Kenworth Truck Company.

Larry Kerman, Cohen, Swados, Wright, Hanifin, Bradford & Brett, L.L.P., Buffalo, NY, for Defendant Detroit Diesel Corporation.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct all further proceedings in this matter, including entry of judgment, in accordance with 28 U.S.C. § 636(c). Defendants Kenworth Truck Company ("Kenworth") and Detroit Diesel Corp. ("DDC") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendants' motions are granted.

### BACKGROUND

The factual and procedural background of this action has been set forth at length in this court's decision and order in which it ruled on defendants' prior summary judgment motions, *see Roneker v. Kenworth Truck Co.,* 944 F.Supp. 179 (W.D.N.Y.1996), and will be repeated here only as necessary to a determination of the issues presented by the motions now pending: On February 21, 1995 plaintiff filed his complaint in this action. He alleged that the 1993 Kenworth T600B truck he purchased in December of 1992 developed

numerous mechanical problems, and that both Kenworth and DDC breached their respective warranties by failing to remedy the problems. Plaintiff alleged that he suffered "actual, consequential and replacement damages" as a result of the breaches, in the amount of $650,000.00 (Item 1, ¶ 15).

On June 7, 1996, defendants moved for summary judgment on the grounds that the Kenworth warranty agreement covering the sale of the truck and the DDC warranty covering the engine each contained language limiting plaintiff's remedy to repair and replacement of defective parts, and excluding consequential damages. In its September 18, 1996 ruling, this court found that material factual issues existed precluding summary judgment as to whether the warranties limited plaintiff's remedy to repair or replacement. However, the court granted defendants' motions to the extent they sought a ruling on the validity of the exclusionary clauses in the warranties. The Kenworth warranty provided:

> IT IS AGREED THAT KENWORTH ... SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES including, but not limited to: loss of income; damage to vehicle, attachments, trailers and cargo; towing expenses, attorney's fees and the liability you may have in respect to any other person.

(Item 24, Ex. F(B)). The DDC warranty provided:

> DDC is not responsible for incidental or consequential costs or expenses which the owner may incur as a result of a malfunction or failure covered by this warranty, such as communication expenses, meals, lodging, overtime, towing, loss of use of the Engine or vehicle ("downtime"), loss of time, inconvenience, cargo loss or damage, and other similar costs and expenses.

(Item 21, Ex. A).

The court determined that these express limitations of consequential damages were not unconscionable, and should therefore be given effect to bar plaintiff's claims for consequential damages in this case. However, because the information in the record on the prior summary judgment motions did not support a "precise demarcation between direct and consequential damages," the court left this question for the jury. *Roneker v. Kenworth, supra,* 944 F.Supp. at 186. Defendants now move for summary judgment seeking a ruling that *all* of the damages sought by plaintiff in this case are consequential damages within the scope of the warranty exclusions, or are otherwise unrecoverable. For the following reasons, defendants' motions are granted.

### DISCUSSION

■ "Consequential damages" are defined in the Uniform Commercial Code as follows:

> Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

N.Y.U.C.C. § 2–715(2). Direct damages, on the other hand, are those "which are the natural and probable consequence of the breach." *Kenford Co., Inc. v. County of Erie,* 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989).

■■ As this court recognized in its prior decision in this case, as a general matter " 'the precise demarcation between direct and consequential damages is a question of fact ... [which] must be left for resolution at trial.' " *Roneker v. Kenworth, supra,* 944 F.Supp. at 186 (quoting *American Elec. Power Co. v. Westinghouse Elec. Corp.,* 418 F.Supp. 435, 459 (S.D.N.Y.1976)). However, where "the parties have gone a long way in defining the scope of consequential damages in the contract itself ...," *American Elec. Power Co., supra,* and "there are no material issues of fact, or contract interpretation, as to whether the damages sought constitute direct or consequential damages ...," *American Telephone and Telegraph Co. v. New York City Human Resources Admin.,* 833 F.Supp. 962, 990 n. 22 (S.D.N.Y.1993), the court may find, "as a matter of law, that the

damages sought by the [plaintiff] ... constitute consequential damages, rather than direct damages." *Id.*

■ In essence, consequential damages are economic losses, such as lost profits. *See PC COM, Inc. v. Proteon, Inc.,* 946 F.Supp. 1125, 1135 (S.D.N.Y.1996); *Canal Elec. Co. v. Westinghouse Elec. Corp.,* 756 F.Supp. 620, 627 (D.Mass.1990), *affd. in part, rev'd in part,* 973 F.2d 988 (1st Cir.1992). As explained in the *American Telephone and Telegraph* case, "[i]t is well-accepted that 'any items of increased costs incurred as a consequence of the breach will be considered as consequential damages.' On the other hand, 'expenditures which are not incurred as a consequence of the breach, but were instead incurred before the breach occurred and in reliance on the contractual warranties, are recoverable as direct damages.'" *American Telephone and Telegraph, supra,* 833 F.Supp. at 991 n. 22 (quoting *American Elec. Power Co., supra,* 418 F.Supp. at 460 n. 44).

■ Put another way, "consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting." *Petroleo Brasileiro, S. A., Petrobras v. Ameropan Oil Corp.,* 372 F.Supp. 503, 508 (E.D.N.Y.1974) (citing *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. 145 (1854)[1]; 51 N.Y.Jur. Sales, § 236 (1966)); *see also Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* 460 F.Supp. 163, 213 n. 62 (E.D.Pa.1978) ("Both Pennsylvania and New York have traditionally considered expenses incurred or gains prevented beyond the immediate buyer-seller transaction to be consequential damages."); *American Elec. Power Co. v. Westinghouse Elec. Corp., supra,* 418 F.Supp. at 459–60 & n. 44 ("Clearly, any items of increased costs incurred as a consequence of the breach will be considered as consequential damages.").

The damages alleged in this case are itemized in plaintiff's supplemental interrogatory response, set forth in a March 29, 1996 letter from plaintiff's counsel and verified by plaintiff, as follows:

1. (a) Loss of income due to "down time:"

| | |
|---|---|
| 1993 | = $ 12,400.00 |
| 1994 | = $ 32,558.00 |
| 1995 | = $ 27,735.00 |

(b) Future lost earnings:

| | |
|---|---|
| $22,000.00 per year for five years | = $110.000.00 |
| TOTAL | = $182,693.00 |

2. Repair costs and excessive maintenance:

| | |
|---|---|
| (a) excessive oil use (Kenworth/DDC) | = $ 936.88 |

---

**1.** In *Hadley,* a miller contracted with a carrier to transport a broken shaft to the manufacturer for repairs. The miller informed the carrier that the shaft was part of the milling machinery and that the shaft must be sent immediately. He did not inform the carrier that the mill could not operate without the shaft. The carrier failed to transport the shaft as soon as agreed, and the miller sought to recover the profits the mill would have earned but for the unnecessary delay caused by the absence of the shaft. The court held that loss of profits was not recoverable because the stoppage of the mill was not a reasonably foreseeable result of the carrier's breach of contract.

As explained in *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* 460 F.Supp. 163, 213 n. 62 (E.D.Pa.1978):

Hadley v. Baxendale thus established the general proposition that a party is liable only for those damages that a reasonable man would expect to follow the breach of a particular contract, *i.e.* the natural and probable consequences unless it is shown specifically that the defendant had reason to know of the circumstances responsible for the special damage and so to foresee the injury. Although the primary issue in *Hadley* was recoverability, the case also offered guidance on categorization. That is, *Hadley* focused on the foreseeability necessary in order to recover consequential damages, but in doing so it characterized general and consequential damage. Under *Hadley* and the contract case law that has followed it, ordinariness or directness in the usual case is the hallmark of a general or direct damage; presence of peculiar circumstances signals special or consequential damages. Foreseeability is a requirement for recovery in any case.

| | | | |
|---|---|---|---|
| (b) compressor (Kenworth) | = | $ | 810.95 |
| (c) engine fuel filter (DDC) | = | $ | 119.46 |
| (d) coolant (DDC) | = | $ | 152.30 |
| TOTAL | = | $ | 2019.59 |

3. Loss incurred by replacing 1993 truck:

| | | | |
|---|---|---|---|
| (a) loss of new trade-in 1993 vehicle to 1995 vehicle | = | $ | 3,682.18 |
| (b) 48 additional monthly payments for 1995 vehicle (total = $112,752) over and above amount owed for 1993 vehicle (total = $50,808) | = | $ | 61,944.00 |
| TOTAL | = | $ | 65,626.18 |
| TOTAL DAMAGES ALLEGED | = | $ | 250,338.77 |

(Item 39, Ex. C).

This information was submitted to the court in connection with the prior summary judgment motions. However, the parties' affidavits, memoranda and arguments focused primarily on the legal issues regarding the validity of the warranty language (*see, e.g.,* Items 20 & 24). The parties did not seek a specific ruling as to whether the particular items of alleged damages should be categorized as "consequential" or "direct" as a matter of law and, as noted above, the information in the record before the court did not support such a ruling.

On this round of motions, defendants have provided additional information and have refocused their legal arguments on the exclusion or recoverability of the particular items of damages set forth in the March 29, 1996 letter. What follows is this court's ruling with respect to each of these items.

**1. Loss of Income and Loss of Future Earnings.**

■ Plaintiff concedes that these items of damages are within the scope of the valid warranty exclusions, and are not recoverable in this action. Accordingly, defendants' motions are granted to the extent that they seek to exclude as consequential damages the amount of $182,693.00 for loss of income and loss of future earnings.

**2. Repair Costs and Excessive Maintenance.**

■ At his deposition on November 22, 1996, plaintiff stated that the amount of $119.46 which he paid for an engine fuel filter was not attributable to either defendant (Item 39, Ex. D, p. 59). He also conceded that the amount of $810.95 which he paid for repairs to a compressor, which was part of the truck's air conditioning unit, was not covered by warranty (Item 39, Ex. F, pp. 18–19). The remaining repair and excessive maintenance costs to be considered are $936.88 for oil use, and $152.30 [2] for coolant, both sought from DDC.

It is beyond dispute that the expenses incurred by plaintiff for the engine's consumption of oil and coolant, excessive or not, were economic losses outside the scope of the immediate buyer-seller transaction. These expenses were foreseeable by DDC, a manufacturer of diesel engines with reason to know of plaintiff's general or particular needs as a self-employed long-distance hauler. Therefore, these expenses can be categorized as consequential damages, excluded by the express warranty language.

Accordingly, I find that the amounts alleged by plaintiff as damages for repairs and excessive maintenance are consequential damages, excluded from recovery as a matter of law.

**3. Loss Incurred by Replacing 1993 Truck.**

Plaintiff alleges that he lost $ 65,626.18 as a result of having to replace the 1993 truck. Included in this calculation is the amount of $3,682.18 for loss of trade-in value; $50,808.00 as the amount of 24 monthly payments

---

**2.** DDC contends that plaintiff testified at his deposition that the actual amount for coolant was $67.28. DDC has not submitted the relevant excerpt from the deposition transcript as an exhibit to its motion. However, this discrepancy is not material in light of the court's ruling as to this item of damages.

on the 1993 truck; and $11,136.00 as the difference between 48 monthly payments on the 1993 truck and the same number of payments on the 1995 truck.

■ Plaintiff claims that the $3,682.18 amount represents the difference between what he received for the 1993 truck when he traded it in, and what he should have received. However, at his deposition plaintiff conceded that the amount of $60,000.00 which he received on trade-in was above the fair market value for a 1993 Kenworth T600B truck driven over 200,000 miles (Item 39, Ex. D, p. 78). This concession is consistent with the proof of fair market value submitted by DDC (*see* Item 22, Mayoras Aff.).

■ Plaintiff also claims that he is entitled to recover 24 monthly payments on the 1993 truck, totaling $50,308.00. In *Smith v. Navistar International Transportation Corp.*, 714 F.Supp. 303 (N.D.Ill.1989), *aff'd*, 957 F.2d 1439 (7th Cir.1992), the district court granted summary judgment in favor of the defendant after determining that the plaintiff was not entitled to consequential or incidental damages under a warranty covering the sale of a defective truck. The practical effect of this order was to limit the amount of damages a jury could award to $19,527.70, the amount the plaintiff had paid for the truck prior to the revocation of his acceptance. The Seventh Circuit affirmed, finding that "the district court's decision to grant the defendants' ... motion to have judgment entered against them in the total amount that a jury could award [the plaintiff] was a 'just, speedy and inexpensive' resolution of the case." 957 F.2d at 1445 (quoting Fed.R.Civ. P. 1). According to the court:

Even though [the plaintiff]'s damages had effectively been capped, [he] remained desirous of a trial. The district court's grant of defendants' motion for judgment in favor of [the plaintiff] not only promoted judicial efficiency, it also served to protect [the plaintiff]'s interest because he received the maximum amount he could recover after a trial. In fact, [the plaintiff] quite possibly recovered more than he was entitled to, given the fact that the defendant ... would have had the opportunity at trial to present evidence of [the plain-

tiff]'s extensive use of the truck (48,488 miles) to offset any relief [he] received.

*Id.* at 1445–46.

In this case, plaintiff did not revoke his acceptance of the 1993 truck. In fact, he traded it in for more than its fair market value, after two years of extensive use (over 200,000 miles). Plaintiff has not produced any evidence or legal authority to support his claim for two years of payments without offset for depreciation or trade-in allowance.

■ Finally, plaintiff claims that he is entitled to recover as "replacement damages" the difference between 48 monthly payments for the 1993 truck and the same number of payments for the 1995 truck. This amount— $11,136.00—is clearly economic loss outside the scope of the immediate buyer-seller transaction, properly categorized as consequential damages.

Accordingly, based on the preponderance of the evidence, I find that the amounts claimed as damages for replacement of the 1993 truck with the 1995 truck are either duplicative, not recoverable, or consequential damages excluded by the warranty language as a matter of law.

### CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (**Items 37 and 40**) are granted. Because there are no remaining issues to be tried in this case, the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**

Dated: Buffalo, New York

August 19, 1997.