THOMAS F. KILDUFF & another *vs.* PLYMOUTH COUNTY ELECTRIC COMPANY & others.

Suffolk. December 9, 1964. — January 6, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Negligence,* Electricity. *Proximate Cause.*

In an action by the owner of a house against an electric company for damage to the house and its contents by fire, where it appeared that while a lineman of the defendant was doing repair work on a pole under adverse weather conditions an energized section of a high voltage main wire slipped from his hands onto another wire and caused current from the main wire to flow directly into the wiring in the plaintiff's house, whereby, in conjunction with an undetermined "fault" in the house, the fire immediately originated at or near the fuse box, conclusions were proper that the lineman was negligent and that his negligence was a proximate cause of the fire.

TORT. Writ in the Superior Court dated June 2, 1960.

The action was heard by *Gourdin,* J., on an auditor's report.

*Edward J. Barshak* (*Steven J. Cohen* with him) for the defendants.

*Reuben Goodman* (*Sidney Berkman & Joseph Kruger* with him) for the plaintiffs.

REARDON, J.   This is an action of tort for damage by fire
to a single family house and contents owned by the plain-
tiffs.   The case was heard by an auditor whose findings
of fact were to be final.   Following the submission of the
auditor's report, including a summary of the evidence, a
judge ordered judgment for the plaintiffs.   The defend-
ants excepted to the judge's ruling and have filed a bill of
exceptions.

The auditor found the following facts.

On March 3, 1960, there was a severe snowstorm which
continued for several days, during which power lines in
Plymouth became heavily coated with ice.   The plaintiffs
owned a single family house to which electricity was sup-
plied by the defendant company.   There was a meter on
the outside of the plaintiffs' house from which electrical
wiring extended upwards along the interior rear wall of the
house for some thirty feet to a fuse box.   "The fuse box
itself was attached to pine boarding between pine studding.
The wiring leading from the outside meter box, under the
floor, and to the fuse box, consisted of a cable containing
the 220 volt line and neutral, all insulated."   Service to the
plaintiffs' house was provided from a pole, numbered "9,"
located some distance from the house.   On March 4, 1960,
power was interrupted on the road where the pole was
located and also to the plaintiffs' house, but was restored
on the evening of March 5, 1960.   On the following day
there was still power to the plaintiffs' house, but just be-
yond the pole which serviced it a break occurred in the main
line, terminating power beyond that point.   A crew of the
defendant company came to pole No. 9 to repair the break
and the defendant Hatton, a lineman first class, ascended
the pole to repair the break by splicing the two loose ends
of the main line.   While pulling them together he permitted
the energized section of a 2,400 volt line to slip from his
hands.   It touched the common neutral line on the pole bar
below "causing a very bright flash and a 'whoosh' sound."
Within three to five minutes he observed black smoke com-
ing from the plaintiffs' house.   Thereafter the house was

destroyed by fire down to the ground floor.  Examination of the fuse box following the blaze showed that some fusing of wires had occurred therein.  Evidence of extreme heat was found also in the main cable.  Upon consideration of testimony, including that of experts, the auditor concluded that while he could not determine "what kind of fault existed in the Kilduff house prior to Hatton's act in dropping the main line" there was nonetheless such a fault as to cause ignition when the system was fed current direct from the 2,400 volt line.  The auditor left as a question of law to the court whether the defendants were chargeable with foreseeability of the prior existence of the fault in the plaintiffs' house.

The report of an auditor with findings of fact final is equivalent to a case stated and it is the duty of the judge to order correct judgment on the facts found by the auditor. *Monaghan* v. *Monaghan,* 320 Mass. 367, 369.  In this instance a skilled electrician dropped a high voltage line which caused electric current to be fed into the plaintiffs' house and wiring.  While without doubt the lineman was laboring under adverse weather conditions, yet he was working with a highly dangerous force which called for adequate precautions on the part of the defendants.  Their duty was to refrain from action from which harm might result; and where there is negligent conduct as here the defendants are liable for the injury proximately resulting to the property of the plaintiffs whether or not the defendants could have anticipated the particular manner in which that damage occurred.  *Newlin* v. *New England Tel. & Tel. Co.* 316 Mass. 234, 236.  *Ryder* v. *Robinson,* 329 Mass. 285, 287. *Altman* v. *Barron's, Inc.* 343 Mass. 43, 47.

The report of the auditor elaborated on the cause of the fire which he found to be electrical, originating at or near the fuse box.  The dropping of the wire by Hatton constituted the active cause, without interruption from any new or independent source, which eventually resulted in the destruction of the plaintiffs' house.  *Wallace* v. *Ludwig,* 292 Mass. 251, 254–256.  We hold the ultimate conclusion of

the auditor, sustained by the subsidiary findings and his entire report, amply descriptive of the cause of the plaintiffs' damage. We are of opinion that this damage was of a nature which was foreseeable by the defendants.

*Exceptions overruled.*