THE STOP & SHOP COMPANIES, INC. vs. BRUCE B. FISHER
& others.[1]

Suffolk.  September 13, 1982. — January 11, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Motion to dismiss, Summary judgment. *Negligence,*
Vessel, Loss of access. *Proximate Cause. Actionable Tort. Nuisance,*
Loss of access. *Way,* Public.

Motions to dismiss a civil action, ostensibly pursuant to Rules 12 (b) (6)
and 56 of the Massachusetts Rules of Civil Procedure, should have
been treated solely as motions under rule 12 (b) (6) where neither party
submitted any factual material beyond the pleadings. [891-893]
A complaint alleging that the defendants' vessels, by negligently colliding
with and obstructing a drawbridge, substantially impaired access to
two established retail stores operated by the plaintiff, with the result
that the plaintiff suffered economic harm from the loss of business
revenues, stated no claim for relief on the theory of negligence
[893-894], but did state a claim for relief on the theory of public nui-
sance [894-896].
Discussion of the factors determining whether a plaintiff has suffered
compensable damages from an obstruction of a public way. [894-899]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 27, 1980.

Motions to dismiss were heard by *Lynch,* J., and judg-
ment was entered by him.

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*George C. Deptula* for the plaintiff.
*Paul G. Boylan* for J. D. Irving, Limited, & another.
*Richard Dempsey* for Bruce B. Fisher.

---

[1] J. D. Irving, Limited, and Universal Sales, Limited.

*John Silvia, Jr., & Jeffrey S. Entin*, amici curiae, submitted a brief.

HENNESSEY, C.J.    The Stop & Shop Companies, Inc. (Stop & Shop), filed a complaint in Superior Court seeking damages for the loss of business revenues allegedly caused by the defendants' negligent collision with a drawbridge resulting in the obstruction of the bridge.   After hearings before a special master, a judge of the Superior Court granted summary judgment for the defendants and dismissed the complaint.   Stop & Shop appealed, and we took the case on our own motion.   We reverse the decision of the Superior Court, in part, upon our conclusion that the plaintiff's complaint adequately states a claim for relief sounding in public nuisance.

The relevant facts as alleged in the complaint are as follows.   Stop & Shop owns and operates a supermarket and a Bradlees retail store in Somerset, Massachusetts.   Substantial numbers of customers from Fall River travel across the Brightman Street bridge (bridge) to shop at these stores. On or about September 2, 1979, the seagoing barge Irving Sea Lion, owned and operated by the defendant J. D. Irving, Limited, negligently struck the bridge.   At the time of the accident, the barge was being pushed by the tugboat Irving Maple, owned and operated by the defendant Universal Sales, Limited, and both the tug and the barge were under the control of the defendant Bruce B. Fisher.   As a result of the collision, the bridge was closed to traffic for approximately two months, causing a substantial decline in the number of customers who patronized Stop & Shop's stores, which were located at one end of the bridge.   Based on these facts, Stop & Shop sought damages for the injury to its business on two theories:   the defendants' negligence was the direct cause of Stop & Shop's economic harm, and the defendants' actions contributed to the creation of a nuisance which caused it substantial injury in the use and enjoyment of its property.

The defendants moved "pursuant to Rule 12 (b) (6) and Rule 56 of the Massachusetts Rules of Civil Procedure," to

dismiss the complaint for "failure to state a cause of action." The parties submitted briefs and memoranda on several legal issues, and hearings on the motions were held before a special master. Neither party submitted any factual materials beyond the pleadings. The special master concluded that "there are no issues of material fact in dispute and the defendants are entitled to prevail as a matter of law." Stop & Shop's position is that the matter before the lower court was a rule 12 (b) (6) motion to dismiss (only), and that the complaint was a sufficient statement under the rule. Nevertheless, the judge granted the motions, which he termed "motion[s] to dismiss (treated as . . . motion[s] for summary judgment)," and dismissed Stop & Shop's complaint.

We conclude that the motions before the judge should have been treated as rule 12 (b) (6) motions, and no more. Our principal consideration of the allegations of the complaint concerns the policy issue whether, in the circumstances alleged here, a plaintiff business establishment states a sufficient claim for relief on either negligence or nuisance grounds, or both. We conclude that the complaint adequately states grounds for relief under its claim sounding in public nuisance.[2]

1. We turn first to Stop & Shop's argument that the defendants' motions should have been treated as motions to dismiss for failure to state a claim upon which relief can be granted under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), rather than motions for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). We agree that the defendants' motions are more appropriately characterized as being under rule 12 (b) (6). Despite the motions' references to rule 56, it appears that the motions were intended to be motions to dismiss the complaint under rule 12

---

[2] Stop & Shop alleges that the defendants' negligent conduct created a public nuisance. Nuisance liability must be "based upon a determination that the interference [complained of] is intentional and unreasonable or results from conduct which is negligent, reckless or ultrahazardous." *Ted's Master Serv., Inc.* v. *Farina Bros.*, 343 Mass. 307, 312 (1961). W. Prosser, Torts, § 87, at 576-577 (4th ed. 1971).

(b) (6), and were so treated by the parties. More significantly, in granting the motions, the judge characterized them as "motion[s] to dismiss (treated as . . . motion[s] for summary judgment)."

We next consider whether these rule 12 (b) (6) motions were properly converted to rule 56 motions. Rule 12 (b) provides that if on a rule 12 (b) (6) motion "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The category of "matters outside the pleading" is broad, but even when construed broadly, such matters must provide some relevant, factual information to the court. 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1366, at 677-678, 681-682 (1969 & Supp. 1982). Cf. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 126 (1982) (admission of relevant fact by counsel at oral argument sufficient to trigger conversion provision of rule 12 [b]). Here, no factual information beyond the pleadings was submitted to or considered by the judge. Memoranda and arguments on legal issues are not sufficient to convert a rule 12 (b) (6) motion to one under rule 56. 5 C.A. Wright & A.R. Miller, *supra* at 682.

The conversion was also improper because Stop & Shop was not notified that it was defending against anything other than rule 12 (b) (6) motions, and so it had no practical opportunity to present materials relevant under rule 56. 5 C.A. Wright & A.R. Miller, *supra* at 683. See *Dale* v. *Hahn*, 440 F.2d 633, 638 (2d Cir. 1971). A party may be held to have constructive notice that the court is treating a rule 12 (b) (6) motion as a motion for summary judgment when it has, itself, submitted extra-pleading material. See *White* v. *Peabody Constr. Co.*, *supra* at 127-128; *Dayco Corp.* v. *Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975). However, that is not the case here.

Since the defendants' rule 12 (b) (6) motions were improperly converted to motions under rule 56, without notice to Stop & Shop, we would affirm the decision below only if "it appear[ed] to a certainty that [plaintiff was ] entitled to no relief under any state of facts which could be proved in support of the claim." Reporters' Notes to Mass. R. Civ. P. 12, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 211 (1982), quoting 2A Moore's Federal Practice par. 12.08, at 2274 (2d ed. 1982). Our holding that Stop & Shop's complaint states grounds for relief in nuisance precludes dismissal under this standard. We therefore proceed to discuss its substantive claims.

2. Stop & Shop relies on *Newlin* v. *New England Tel. & Tel. Co.*, 316 Mass. 234, 235 (1944), to support its claim in negligence. The plaintiff in *Newlin* alleged that the defendant maintained a pole in a defective condition, by reason of which it fell, cutting off a power line to the plaintiff's mushroom plant. As a result, the mushrooms overheated, the crop was destroyed, and the plaintiff sought to recover for his economic loss. The court held that the plaintiff stated a cause of action. *Id.* at 237-238.

Stop & Shop's reliance on *Newlin* is misplaced. The economic loss in *Newlin* arose from physical harm to the plaintiff's crop. Stop & Shop's losses, by contrast, were not associated with any physical damage to its property.

Those cases relying on *Newlin* have involved physical harm to the plaintiff or his property. See *Kilduff* v. *Plymouth County Elec. Co.*, 348 Mass. 328, 330-331 (1965) (court relied on *Newlin* to allow recovery by plaintiff whose house burned down in an electrical fire caused when defendant's employee dropped an electrical line); *Morani* v. *Agatha Fisheries, Inc.*, 213 F. Supp. 257, 259-260 (D. Mass. 1963) (*Newlin* supported recovery by worker who was overcome by carbon monoxide gas and fell several feet, causing injuries). Moreover, the Restatement (Second) of Torts § 766C (1977) denies recovery for "pecuniary harm not deriving from physical harm . . . [which] results from the [defendant's] negligently . . . interfering with the [plain-

tiff's] acquiring a contractual relation with a third person." Although some commentators have criticised this position, it remains the general view. See W. Prosser, Torts § 130, at 952 (4th ed. 1971); Perlman, Interference with Contract and other Economic Expectancies: A Clash of Tort and Contract Doctrine, 49 U. Chi. L. Rev. 61, 70 (1982); Note, Negligent Interference with Economic Expectancy: The Case for Recovery, 16 Stan. L. Rev. 664 (1964) (criticising the general view). Under these circumstances, we see no reason to apply the negligence analysis of *Newlin* to Stop & Shop's purely economic harm.

3. Stop & Shop's primary claim is that it is entitled to recover because the defendants' conduct created a nuisance which caused Stop & Shop economic loss. Accepting Stop & Shop's allegations as true, the defendants' negligence closed the bridge for approximately two months. This was an obstruction of a public way, and as such constituted a public nuisance. See *Robinson* v. *Brown*, 182 Mass. 266, 267-268 (1902); *Wesson* v. *Washburn Iron Co.*, 13 Allen 95, 101, 102 (1866); *Harvard College* v. *Stearns*, 15 Gray 1, 6-7 (1860); *Blood* v. *Nashua & Lowell R.R.*, 2 Gray 137, 140 (1854) (river); Prosser, Private Action for Public Nuisance, 52 Va. L. Rev. 997, 1001-1002 (1966). It is firmly established that an individual cannot recover for damages caused by a public nuisance "unless . . . he has sustained some special and peculiar damage thereby, different in kind, and not merely in degree, from that which is occasioned to other persons by the alleged nuisance." *Willard* v. *Cambridge*, 3 Allen 574 (1862). *Eaton* v. *Locke*, 202 Mass. 324-325 (1909). *Brayton* v. *Fall River*, 113 Mass. 218, 227 (1873). *Wesson* v. *Washburn Iron Co.*, supra at 103. *Fall River Iron Works* v. *Old Colony & Fall River R.R.*, 5 Allen 221, 224 (1862). W. Prosser, Torts, supra § 88, at 587. Restatement (Second) of Torts, supra § 821C (1). The difficulty has been to determine whether a given plaintiff's damages are different in kind, so as to support recovery.

Our older cases held that, absent physical harm to the plaintiff's property, obstruction of a public way caused

special damages only if the obstruction cut off immediate access to a public highway or river. See, e.g., *Eaton* v. *Locke, supra* at 325; *Robinson* v. *Brown, supra* at 267; *Nichols* v. *Richmond,* 162 Mass. 170, 172-173 (1894); *Shaw* v. *Boston & Albany R.R.,* 159 Mass. 597, 598-599 (1893); *Willard* v. *Cambridge, supra* at 575. Cf. *Home for Aged Women* v. *Commonwealth,* 202 Mass. 422, 427-428 (1909) (eminent domain). Thus, in *French* v. *Connecticut River Lumber Co.,* 145 Mass. 261 (1887), an innkeeper was allowed to recover for lost profits caused by the defendant's obstructing a river at the plaintiff's landing place, which cut off the plaintiff's access to the river. See *Putnam* v. *Boston & Providence R.R.,* 182 Mass. 351, 353-355 (1903); *Brayton* v. *Fall River, supra* at 229, 230.[3] In essence, we took the view that use of a public way was a public right, and so a harm stemming from loss of that use, absent loss of direct access, was not different in kind. Thus, harm to Stop & Shop resulting from its customers' loss of the use of a public road would not amount to special damages under these cases. By contrast, physical harm to property, or loss of immediate access from one's property to the system of public roads or rivers, interfered with an individual's right, and hence was a special harm. See *Blackwell* v. *Old Colony R.R.,* 122 Mass. 1, 3 (1877); *Willard* v. *Cambridge, supra* at 575.

Our old rule has the advantage of avoiding a multitude of suits by setting up a clear and restrictive line of demarcation between special and general damages. While such a clear line also has a certain theoretical appeal, we conclude that its clarity does not compensate for the fact that it precludes any claim, even in cases where an established business may have been virtually destroyed. Cf. *East Cairo Ferry Co.* v. *Brown,* 233 Ky. 299, 301 (1930) (because ninety per cent

---

[3] The cases did not distinguish between the plaintiff's use of a river or highway, for example, as a common carrier, and use by the plaintiff's customers. Compare *Burgess* v. *M/V Tamano,* 370 F. Supp. 247 (D. Me. 1973) (commercial fishermen could recover for loss of livelihood due to oil pollution, but beach hotel owner could not recover for loss of customers).

of plaintiff's customers travelled over road to reach plaintiff's ferry, plaintiff suffered special damages when defendant obstructed road). Accordingly, we hold that an established business may state a claim in nuisance for severe economic harm resulting from loss of access to its premises by its customers.

We note that a majority of the Federal courts take the opposite view.[4] Although they use negligence analyses, it is clear that these Federal courts would reach the same result in nuisance, and a few cases have expressly so held. *Dick Meyers Towing Serv.* v. *United States*, 577 F.2d 1023, 1025 n.4 (5th Cir. 1978). *In re Marine Navigation Sulphur Carriers, Inc.*, 507 F. Supp. 205, 210 (E.D. Va. 1980). The question is admittedly one of policy; at what point should the tortfeasor's

---

[4] The United States Courts of Appeals for the Fifth and Eleventh Circuits have adopted a rule, similar to that of the Restatement (Second) of Torts, *supra*, § 766C, denying recovery for negligently caused economic harms. See *Kingston Shipping Co.* v. *Roberts*, 667 F.2d 34, 35 (11th Cir.), cert. denied sub nom. *ABC Containerline, N.V. Kingston Shipping Co.*, 458 U.S. 1108 (1982); *Louisville & Nashville R.R.* v. *M/V Bayou Lacombe*, 597 F.2d 469, 472-473 (5th Cir. 1979) (no recovery for plaintiff which suffered economic loss when it was forced to reroute its trains because defendant crashed into a bridge); *Dick Meyers Towing Serv.* v. *United States*, 577 F.2d 1023, 1024-1025 (5th Cir.), cert. denied, 440 U.S. 908 (1978) (plaintiff denied damages for losses to its towing business when the river on which it operated was closed, allegedly due to the defendant's negligence in operating and maintaining a lock). Other courts have relied on a theory developed in *Petition of Kinsman Transit Co.*, 388 F.2d 821, 824-825 (2d Cir. 1968), that such losses, although foreseeable, are as a matter of policy too remote to support recovery. *Id.* at 825. See *General Foods Corp.* v. *United States*, 448 F. Supp. 111 (D. Md. 1978) (plaintiff could not recover increased shipping expenses from defendant who negligently collided with bridge, putting it out of commission). Thus, in *In re Marine Navigation Sulphur Carriers, Inc.*, 507 F. Supp. 205 (E.D. Va. 1980), the court relied on *Kinsman* to dismiss claims based on economic losses suffered when a vessel collided with a bridge, temporarily closing it. *Id.* at 206. The claimants included a common carrier seeking damages for additional operating costs and loss of trade, a manufacturer seeking the same, due to reduced access to its markets, and the proprietors of two historic houses, who alleged they lost profits because the temporary closing of the bridge limited access to their properties. *Id.* at 207-208. The court held that "claimants are not entitled to recover damages for indirect business losses and expenses due to the public's loss of use of a highway and waterway arising out of the negligent destruction of a bridge." *Id.* at 210.

liability stop. See *Petition of Kinsman Transit Co.,* 388 F.2d 821, 824 (2d Cir. 1968); *In re Marine Navigation Sulphur Carriers, Inc., supra* at 209-210. We recognize the wisdom of the general rule which denies recovery for negligently caused economic harm. However, not all negligent acts give rise to a public nuisance, or more particularly, to an obstruction of a public way. In light of the degree of harm required for an obstruction to amount to a public nuisance, and the dependence of businesses and their customers on access to business establishments, we conclude that recovery may be warranted in some cases.

The plaintiff must suffer special pecuniary harm from the loss of access. Severe pecuniary loss is usually a special type of harm, but if a whole community suffers such loss, then it becomes a public wrong and the plaintiff cannot recover. Restatement (Second) of Torts, *supra,* § 821C comment h. Prosser, Private Action for Public Nuisance, *supra* at 1013-1015. Thus, the question becomes whether so many businesses have suffered the same economic harm that the plaintiff's damages are no longer special.

Similarly, the point at which a plaintiff has lost access is not fixed. "Deprivation of immediate access to land . . . which is clearly a special kind of harm, shades off by imperceptible degrees into the remote obstruction of a highway, which is just as clearly not." Restatement (Second) of Torts, *supra* § 821C comment c. Accord, W. Prosser, Torts, *supra* § 88, at 589-590. "The problem is the familiar legal one of drawing a line between two clearly different extremes at some point where only an artificial distinction is possible between points that lie immediately on either side." Prosser, Private Action for Public Nuisance, *supra* at 1022.

In evaluating a claim by a plaintiff that he should be compensated for a land taking by reason of the rerouting of a road in *Malone* v. *Commonwealth,* 378 Mass. 74, 80 (1979), we noted that "loss of access need not be complete to justify an award . . . . Circuity of access may be rendered extreme to the point of counting as a substantial impairment of access." Although we deal here with nuisance liability,

we can look to *Malone* for guidance.  Indeed, nuisance cases and takings cases have similar roots.  Our older cases employed the same reasoning in considering legal and tortious obstructions, and in *Stanwood* v. *Malden,* 157 Mass. 17, 18 (1892), we noted that compensation was due for a taking, to the same extent that damages would lie "at common law if the acts which caused the nuisance have been done without authority of statute."

*Malone* suggests we consider "the existence, availability, and feasibility of routes . . . in connection with the uses to which the property has been . . . put, to determine whether the claimant or his patrons, previously in a reasonable relation to a road system reaching the property, have now been left without such a relation." *Malone* v. *Commonwealth, supra* at 80.  See *LaCroix* v. *Commonwealth,* 348 Mass. 652, 657 (1965) (no compensation if access to public highway system, while less convenient, is still reasonable and appropriate after the taking); *Stanwood* v. *Malden, supra* at 19 ("not enough to show that [plaintiff] has suffered by the diversion of travel . . . if the access to the system of public streets remains substantially unimpaired").  Accord, Annot., 49 A.L.R. 330, 333 (1927); Annot., 93 A.L.R. 639 (1934) (a nonabutting property owner has no right to compensation if he still has reasonable access to the general system of public roads); Annot., 118 A.L.R. 921 (1939) (property owner has no right to compensation solely for diversion of traffic due to highway relocation).  We have been sparing in holding that a plaintiff's relation to the public road system is no longer reasonable and appropriate.  See *Malone* v. *Commonwealth, supra* at 79.  Thus, in *Tassinari* v. *Massachusetts Turnpike Auth.,* 347 Mass. 222, 225 (1964), we denied compensation when the street on which the plaintiff's business was located was closed at one end even though delivery trucks would consequently have to back out of the street.  Cf. *Wine* v. *Commonwealth,* 301 Mass. 451, 458 (1938) (plaintiff suffered special damages when the road on which his gas station was located was closed); Annot., 120 A.L.R. 896 (1939).  However, as *Malone* sug-

gests, in an appropriate case the nature and location of the plaintiff's business may lead us to conclude that the plaintiff has suffered special damages from an obstruction of a public way, even though it is not totally cut off from the public road system.

We express no opinion as to the merits of Stop & Shop's public nuisance claim under these tests; the defendant remains free to challenge the claim on a motion for summary judgment. We also note that the parties do not attack the special master's decision to base his recommendation on State law. We therefore do not decide whether Federal law applies to this action, either as a matter of our law under *Thorneal* v. *Cape Pond Ice Co.*, 321 Mass. 528 (1947), or of its own force.

4. In sum, it is clear beyond dispute, and for obvious reasons, that policy rules limiting liability are recommended for application to cases like this one. In negligence cases, recovery has wisely been confined to physical damage to the plaintiff's property. In public nuisance claims we now decide that, absent physical harm or immediate or direct loss of access to the plaintiff's property, relief is warranted only where the plaintiff has suffered special pecuniary harm and substantial impairment of access. Further, these two principal issues are questions of degree.

The judgment of the Superior Court is reversed and a new order is to be entered on the defendants' motions to dismiss, "pursuant to Rule 12 (b) (6), and Rule 56," allowing the motions under rule 12 (b) (6), as to the plaintiff's claim in negligence, and denying the defendants' motions under rule 12 (b) (6) (only), as to the plaintiff's claim in public nuisance.

*So ordered.*