GARWETH CORPORATION *vs.* BOSTON EDISON COMPANY.

Suffolk. March 3, 1993. - May 20, 1993.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence,* Economic loss, Independent contractor. *Massachusetts Oil and Hazardous Material Release Prevention Act.*

In a negligence and strict liability action, the judge correctly ordered summary judgment for the defendant where the plaintiff sought recovery for economic losses and made no showing that the defendant was responsible for any personal injury or physical damage to property such as would preclude operation of the economic loss rule. [304-306]

A claim for solely economic loss not directly resulting from environmental damage cannot be maintained under G. L. c. 21E, § 5 (*a*) (5) (iii), a provision of the Massachusetts Oil and Hazardous Material Release Prevention Act. [306-308]

CIVIL ACTION commenced in the Superior Court Department on July 30, 1990.

The case was heard by *Margot Botsford*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Evan Slavitt* (*Marcy Axelrad* with him) for the plaintiff.

*Francis J. Sally* (*Andrea Peraner-Sweet* with him) for the defendant.

LYNCH, J. Garweth Corporation (Garweth) seeks to recover from Boston Edison Company (Edison) for damages allegedly caused by a 1987 fuel oil spill from one of Edison's tanks in the South Boston section of Boston. Garweth's complaint was based on common law claims of negligence, tort-based strict liability, and G. L. c. 21E (1990 ed.). A judge in the Superior Court granted summary judgment in favor of Edison on all three counts. Garweth appealed. We trans-

ferred the case here on our own motion and conclude that the judge was correct in granting summary judgment.

The following facts are not in dispute. On November 9, 1987, a level control measuring device malfunctioned at Edison's New Boston Station in South Boston, accidentally releasing a quantity of No. 6 fuel oil from a 25,000 gallon underground tank. A portion of the released oil migrated into storm drains on Summer Street, including locations where Garweth was performing sewer construction work for the Boston Water and Sewer Commission (BWSC). Edison hired Clean Harbors, Inc. (CHI), an independent contractor, to clean up the spill. Edison had also reportedly agreed to reimburse BWSC up to $44,750, an amount BWSC paid to Garweth for additional work Garweth performed cleaning up and encapsulating oil remaining in BWSC's sewer lines after the spill.

Garweth claims that, as a result of the oil spill and related cleanup, it incurred monetary damages because of a forced 157-day delay in its ability to complete its contract work for BWSC. Included within its claim is damage to a compressor which was struck by an unidentified vehicle on December 5, 1987. Garweth alleges that CHI was responsible for the damage to the compressor because, during cleanup operations, CHI personnel removed barricades placed around the compressor by Garweth. The total damages Garweth claims amount to $323,113.18, with the single item of property damage being the compressor valued at $3,937.50.

1. *Economic loss rule.* An order granting summary judgment will be upheld if the judge ruled on undisputed material facts and his rulings were correct as a matter of law. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). The initial burden in a motion for summary judgment rests with the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

Garweth's claims are thwarted by the economic damage rule limiting recovery for economic losses in tort-based strict liability or negligence cases absent personal injury or physical damage to one's property. See *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989); *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 893-894 (1983); *Marcil* v. *John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 630 (1980); Restatement (Second) of Torts § 766C (1979).

Garweth seeks to avoid application of that rule by alleging that Edison is responsible for the loss of Garweth's compressor one month after the oil spill. The judge ruled that Garweth offered no evidence "on which a factfinder could permissibly conclude that Edison reasonably could or should have foreseen, when the oil spill occurred on November 9, 1987, that approximately one month later the company hired to conduct the cleanup would proceed to remove from the street protective barricades belonging to an unrelated party." The judge relied on affidavits submitted by the chief engineer at Edison's New Boston Station, stating that he hired CHI to perform the cleanup work but neither he or any other Edison personnel controlled CHI's work. *Herrick* v. *Springfield*, 288 Mass. 212, 216 (1934) (employer of independent contractor is not liable for injuries caused by negligence of contractor or its employees). The judge noted that Garweth did not by way of affidavit or otherwise dispute that CHI was functioning as an independent contractor. There was no material factual dispute concerning Garweth's claim that Edison's negligence caused the alleged damage to the compressor.

Garweth also argues that the judge erroneously extended the economic loss rule beyond its ordinary context. This assertion is without merit. The traditional economic loss rule provides that, when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses. See *Robins Dry Dock & Repair Co.* v. *Flint*, 275 U.S. 303, 309 (1927); *Stop*

*& Shop Cos.* v. *Fisher, supra*; 2 Dobbs, Remedies § 6.6(2), at 142 (2d ed. 1993).

Garweth contends that, because this is a contamination case, the economic loss rule is inapplicable. This argument also fails. The asbestos cases cited by Garweth permit recovery for contamination that has occurred in conjunction with physical damage to property. See *Greenville* v. *W.R. Grace & Co.*, 827 F.2d 975, 982 (4th Cir. 1987) (city allowed to recover in tort for economic cost of removing asbestos from city hall because presence of asbestos in building constituted physical damage and possible future personal injury). Decisions in other jurisdictions on which Garweth relies allowing recovery by commercial fishermen and others whose livelihoods have been interfered with as a result of oil spills or other acts on the public domain have no application to the facts of this case, even if we assume those decisions would be followed here. See *Union Oil Co.* v. *Oppen*, 501 F.2d 558, 568-570 (9th Cir. 1974) (commercial fisherman allowed to recover damages for economic losses due to oil spill); *Birchwood Lakes Colony Club, Inc.* v. *Medford Lakes*, 90 N.J. 582, 590 (1982) (owners of lakeside property which was damaged by pollution from sewer treatment plant could sue for compensatory damages on nuisance theory). Cf. *In re TMI Litig. Governmental Entities Claims*, 544 F. Supp. 853, 856 (M.D. Pa. 1982) (damages for civil defense expenses and government employees' wages in connection with accident at nuclear facility were purely economic losses and not compensable absent physical damage); *General Pub. Utils.* v. *Glass Kitchens of Lancaster, Inc.*, 374 Pa. Super. 203 (1988) (recovery denied for economic loss to local tourist industry, suffered after nuclear incident at plant because no personal injury or property damage shown). We have, of course, recognized that an established business may state a claim in nuisance for severe economic harm resulting from loss of access to its premises by its customers. *Stop & Shop Cos.* v. *Fisher, supra* at 894-896.

2. *Claim for economic losses under G. L. c. 21E.* Garweth contends that G. L. c. 21E, the Massachusetts Oil and Haz-

ardous Material Release Prevention Act, provides recovery for its losses allegedly caused by the oil spill. Specifically, Garweth relies on G. L. c. 21E, § 5 (*a*) (5) (iii), which provides in pertinent part: "[A]ny person who otherwise caused or is legally responsible for a release or threat of release of oil . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release." The judge ruled that the statutory term "real or personal property" in § 5 defines personal property to mean tangible personal property and the Legislature did not intend to create a cause of action permitting recovery for economic loss not directly resulting from environmental damage. We agree.

General Laws c. 21E was enacted "to clarify and improve the commonwealth's capability for responding to releases of oil and hazardous material and to recover response costs from persons responsible for releases for which it has incurred such costs." *Nassr* v. *Commonwealth*, 394 Mass. 767, 774 (1985), quoting St. 1983, c. 7, emergency preamble. See *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 95 (D. Mass. 1990). Under G. L. c. 21E, § 4 (1990 ed.), a plaintiff has a private right of action to enforce the purpose of the act, *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. 188, 197 (1987), and may assert a claim for "reimbursement . . . for the reasonable costs of . . . assessment, containment and removal" of the hazardous material. G. L. c. 21E, § 4.

Garweth is not asserting a claim for assessment, containment, or removal of hazardous material. None of the released oil contaminated or damaged any tangible or real property owned by Garweth. The economic losses claimed by Garweth are premised on the fact that it had a contract with a third party whose property was contaminated by a release of oil.

Our interpretation is consistent with the Federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) which is analogous to G. L. c. 21E. See 42 U.S.C. §§ 9601 et seq. (1988); *Griffith* v. *New England*

*Tel. & Tel. Co.*, 414 Mass. 824, 829 (1993). See also *Dedham Water Co.* v. *Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1156 (1st Cir. 1989); *Sheehy* v. *Lipton Indus.*, *supra* at 198. CERCLA reflects Congress's desire to "hold liable those who would attempt to dispose of hazardous waste or substances under various deceptive guises in order to escape liability for their disposal." *Dayton Indep. Sch. Dist.* v. *U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1065-1066 (5th Cir. 1990). Under CERCLA, a private right of action is permitted for those who suffer injury but it must be part of a cleanup or response to a hazardous material problem. See *Exxon Corp.* v. *Hunt*, 475 U.S. 355, 360 (1986); *Artesian Water Co.* v. *New Castle County*, 851 F.2d 643, 650 (3d Cir. 1988); *Wehner* v. *Syntex Corp.*, 681 F. Supp. 651, 653 (N.D. Cal. 1987); *Adams* v. *Republic Steel Corp.*, 621 F. Supp. 370, 376-377 (W.D. Tenn. 1985). Such is not the case here.

*Judgment affirmed.*