Graham, J.
This action was brought by Eastern Contractors, Inc. alleging defamation (Count I), intentional interference with an advantageous business relationship (Count II), negligence (Count III), and violation of G.L.c. 93A (Count IV), all arising from actions taken during the selection of a building contractor for the construction of a public school in Salem. Defendants have moved for summary judgment on all counts. For the reasons outlined below, defendant’s motion is ALLOWED.
BACKGROUND
The undisputed facts are as follows:
In 1991, the City of'Salem sought bids for the construction of a new middle school pursuant to G.L.c. 149, §§44A-44J.[1] At the time of the bid opening, Eastern Contractors’ (“Eastern”) bid was the lowest received. Due to a clerical error from a sub-bidder, the City recalculated the three lowest contractor bids. Even after this recalculation, Eastern’s bid remained the lowest. The City asked the project architects, Earl R. Flansburgh & Associates (“ERFA”), to advise the city on the skill, ability and integrity of the three lowest bidders. As a result, ERFA conducted an extensive investigation of Eastern. As part of this investigation, ERFA contacted Eastern’s previous employers, the attorney general’s office (which was investigating Eastern on an unr elated matter), a LoweR Sun reporter who had written a series of articles critical of Eastern’s performance on prior jobs and the attorneys for a town suing Eastern over a prior job. The attorney general’s office, as was'its practice, declined to comment on the existence of an ongoing investigation except to say that, where there had been no indictment of Eastern, any potential investigation was irrelevant. .Inquiries of former employers yielded both positive and negative feedback concerning Eastern’s past performance. In a letter to the Salem School Building Committee (“Committee”) dated November 21, 1991, David S. Soleau (“Soleau”), ERFA’s vice-president, reported his conclusions. The letter acknowledges that some positive feedback was received concerning Eastern but that, overall, the responses from prior employers indicated that Eastern’s record was “abominable.” Soleau noted that many of Eastern’s large construction projects were in litigation,[2] that prior employers had complaints about Eastern’s performance, and that Eastern’s overall rating with the DPCO put them just over the bare minimum required to qualify for such jobs. ERFA’s main conclusion was that Eastern should not be awarded the contract. It is undisputed that the letter contained a number of minor inaccuracies. For example, ERFA identified one project that resulted in litigation as the “ToWnshead” project when it was in actuality the “Ashby” project. Additionally, Soleau’s letter stated that “[fjrom their past project list it appears clear that projects over $6,000,000 have been or are now in litigation.” Eastern points to at least one project in excess of $6,000,000 which is not in litigation. As a result of Soleau’s letter, the Ciiy offered the contract to another bidder.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are. no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving, party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to a judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Further, “[a] complete failure of proof concerning an éssential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Id. at 711 (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Count I — Defamation
Eastern’s action for defamation arises from two separate publications: Soleau’s letter of November 21, 1991 to the Salem School Building Committee and Soleau’s affidavit, offered earlier in this action. With regard to Soleau’s affidavit, communications made within the course of judicial proceedings are subject to an absolute privilege and cannot be the basis of a defamation action unless the defendant has made an unreasonable publication of the same. Sullivan v. Birmingham 11 Mass.App.Ct. 359 (1981). The only remaining publication at issue, then, is the November 21, 1991 letter.
It is worthy of note, initially, that most of the letter is not actionable since it expressed only opinion rather than fact. “Statements of fact may expose their authors or publishers to liability for defamation, but statements of pure opinion cannot.” King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987). “The determination whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either fact or opinion.” Id. *252 at 709 (citations omitted). In the case at bar, the majority of the letter in question is clearly ERFA’s opinion as to Eastern’s suitability for the job. Indeed, ERFA was hired to give an opinion on the three low bidders and that is exactly what it has done.
There are, however, a number of statements within the letter which are clearly statements of fact.[3] For the purposes of this motion, the court will accept as true the plaintiffs allegation that these particular factual statements were defamatory. Even so, defendants are entitled to summary judgment on this count because they enjoyed a conditional privilege to publish such material. “Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest.” Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984) (citations omitted); Foley v. Polaroid Corp., 400 Mass 82, 94-96 (1987). The court has also “recognized that there is a qualified, or conditional, privilege where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." Id. at 513, n.8 (citations omitted). Using this test, it is clear that, as a matter of law, the defendants were entitled to a conditional privilege with respect to the letter to the committee. This privilege is similar to the one enjoyed by employers and former employers who furnish useful information about employees and former employees. See, for example, Bratt at 516-17 and cases cited therein.
Once a conditional privilege is shown to exist, the burden shifts to the plaintiff to show that the privilege was abused and thereby lost. Foley v. Polaroid Corp., 400 Mass. 82, 85 (1982). Moreover, ”[o]n a motion for summary judgment, the plaintiff bears the burden of establishing abuse of the conditional privilege ... by ‘clear and convincing’ evidence." Catrone v. Thoroughbred Racing Associations, 929 F.2d 881 (1st Cir. 1991) (citations omitted). A conditional privilege of this sort can only be lost if:
1. the publication was unnecessary, unreasonable or excessive. Bratt, supra, at 513, or,
2. the publication was made with the knowledge that its statements were false or with a reckless disregard for the truth or falsity. A.F.M. Corp. v. Corporate Aircraft Management, 626 F.Supp. 1533, 1552 (D.Mass. 1985) (citations omitted), or
3. the publication was made primarily out of spite, ill will, or some motive unrelated to the contractual relations involved. A.F.M. Corp. at 1552 (citations omitted).
Certainly the plaintiff has alleged that the defendants’ actions were motivated by spite or ill will, but the plaintiff has provided no evidence from which a reasonable jury could conclude that the defendants were motivated primarily by ill will. “Even assuming the [defendants] harbored ill will, it remained for [the plaintiff] to establish that these communications were designed to serve some purpose beyond or ... outside the purpose of the privilege.” Catrone, 929 F.2d at 890 (citations omitted). “[I]f the motivating force for the publication is shown not to be ill will, its existence is immaterial. Incidental gratification of personal feelings is irrelevant." Id. (citations omitted). In the present case, ERFA was hired by the committee to evaluate the low bidders for its prospective construction. ERFA’s motivation in reporting its findings, therefore, was to live up to its contractual obligations with the committee.
While it is true that “[wjhere a party’s state of mind or motive is an issue, summary judgment is disfavored.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc. at 276, n.4 (citations omitted), this “does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claims.” National Association of Government Employees, Inc. v. Central Broadcasting Co., 379 Mass. 220, 231 (1979) (quoting Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). The court cannot allow a case to go to the jury where the facts concerning the defendant’s state of mind are such that the jury “would have to indulge impermissibly in unsupported speculation” in order to find for the plaintiff. LeBlanc v. Great American Insurance Company, 93-1050 (1st Cir., Sept. 29, 1993). Such would be the case here.
The plaintiff also points to a number of minor inaccuracies in Soleau’s letter to the committee as evidence of the defendants’ negligence. Specifically, Eastern points to the comment about projects in excess of $6,000,000 as evidence of defendant’s negligence. Such inaccuracies, however, in light of the overall accuracy of the letter, do “no more than raise an issue of whether the [defendant] was negligent as to specific details.” Catrone v. Thoroughbred Racing Associations, 727 F.Supp. 717, 726 (D.Mass. 1989). Such negligence, even if proven, would not defeat the defendants’ conditional privilege. Id.; Bratt at 515, n.11 (“To apply the negligence standard to a conditional privilege would defeat the concept of its obj ective of promoting the free flow of information to further a legitimate private or public interest”). The court has held in no uncertain terms that the plaintiff must prove that the defendant acted recklessly with regard to the defamatory material in order to defeat the defendants’ conditional privilege. Bratt at 512-16. Where, as here, the plaintiff has produced no evidence which would allow a reasonable jury to conclude that the defendant has acted recklessly, summary judgment is appropriate. Id.; Catrone, supra.
Finally, the plaintiff argues that the defendants abused their privilege by conducting an investigation *253 that exceeded the scope of permissible inquiry as set out by G.L.c. 149, §§44-48 and 810 C.M.R. 4.13.[4] Plaintiff argues that these two sections required the defendants to limit their inquiry to facts contained in the plaintiffs most recent DPCO update statement but that the defendants instead engaged in a “search and destroy mission” designed to unearth negative comments about the plaintiff. In this regard, however, plaintiffs have mischaracterized the applicable sections. The sections cited direct the awarding authority ’ to conduct its own inquiry into the bidder’s qualifications. While the sections require the awarding authority to utilize the most recent update statement, inquiries are not limited to such. Indeed, DPCO form CQ3, the update summary itself, instructs the awarding authority that the statement “must be reviewed and verified to the satisfaction of the awarding authority before a contract is awarded. The bidder’s performance on projects completed since his last certification . . . must be part of the review and some references should be contacted by the awarding authority as part of its investigation. If the awarding authority determines that the bidder does not demonstrably possess the skill, ability and integrity necessary to faithfully perform the work, it shall reject the bid.” In the present case, it would be impossible to say that the defendants “recklessly” abused their privilege by conducting an extensive investigation of the plaintiff when the defendants were required by regulations to do just that. The record clearly shows that the defendants used the update statement in their assessment of the plaintiff and it was not a reckless abuse of privilege for the defendants to consider other sources of information as well.
Count II — Intentional Interference With An Advantageous Business Relationship
Count Two of the complaint alleges an intentional interference with an advantageous business relationship. A claim for such interference is recognized within the Commonwealth and is an extension of the common law tort of intentional interference with a contractual relationship.[5] Owen v. Williams, 322 Mass. 356, 362 (1948). To succeed on a claim for intentional interference with an advantageous business relationship, the plaintiff must prove:
1. the existence of the business relationship,
2. that the defendant knowingly interfered with the business relationship,
3. that the defendant’s interference, in addition to being intentional, was improper in motive or means, and;
4. that the plaintiff was harmed by the defendant’s activities.
Wright v. Sherman Hospital for Crippled Children, 412 Mass. 469, 476 (1992); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass 262, 272 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990). For the reasons outlined under Count I, however, this claim must also fail. “The conditional privilege likewise protects the publisher from claims for interference in advantageous business relationships.” Catrone, 929 F.2d at 887 (citing Gram v. Liberty Mut. Ins. Co., 384 Mass 659 (1981); A.F.M. Corp. v. Corporate Aircraft Management, 626 F.Supp. 1533, 1551-52 (D.Mass. 1985)).
Count III — Negligence
Count III of the plaintiff s complaint alleging negligence on the part of the defendants must fail for two reasons. First, since the plaintiffs negligence claim is predicated on the same acts as the first two counts, it follows that the count must fail. To hold otherwise would allow the plaintiff to make an end run around the SJC’s clear requirement that the plaintiff must show, at a minimum, recklessness in order to defeat the defendants’ conditional privilege. Secondly, even if this were not the case, the court has held that a negligence action cannot be maintained where the only harm alleged is to an economic interest.[6] Stop & Shop Cos., Inc. v. Fisher, 387 Mass. 889 (1983). For both of these reasons, summary judgment is appropriate on the plaintiffs negligence claim.
Count IV — G.L.c. 93A
Count IV of the plaintiffs complaint alleges violations of the Commonwealth’s consumer protection law, G.L.c. 93A. In order to prevail on a 93A action, the business plaintiff must show that the defendants engaged in unfair or deceptive practices which would be objectionable to the seasoned business person. “The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498 (1979). In the present case, where the court has already held that the defendants’ actions are deserving of protection to further a legitimate business interest, it would be inconsistent to then hold that these very same actions are unfair and deceptive.
ORDER
For the reasons stated hereinabove, the defendants’ motion for summary judgment is ALLOWED.

 There is some dispute between the parties as to whether the bidding process should be governed by G.L.c. 149 or G.L.c. 30B. For the purposes of this motion, the court accepts the plaintiffs argument that the bidding was governed exclusively by G.L.c. 149 (and appropriate Division of Capitol Planning and Operations (“DPCO”) regulations).

 The parties have made an issue over the fact that in some of the pending litigation. Eastern was the plaintiff rather than the defendant. Eastern argues that Soleau’s letter misrepresented Eastern’s status in much of the litigation. It should be noted that, with respect to construction litigation, the mere status of a party as plaintiff or defendant is not necessarily indicative of which party feels aggrieved. As Soleau’s affidavits note, some of the litigation where Eastern was a plaintiff resulted when awarding authorities withheld payments because of their dissatisfaction with Eastern’s work. Eastern *254 would subsequently sue for these payments. In any event, this fact alone is not dispositive of the present motion.

For example, the letter contains the statement, “From their past project list it now appears clear that projects over $6,000,000 have been or are now in litigation.”

 G.L.c. 149, §44A defines a “responsible" bidder as one who:
demonstrably possess[es] the skill, ability and integrity necessary to faithfully perform the work called for by a particular contract, based upon a determination of competent workmanship and financial soundness in accordance with the provisions of section forty-four D of this chapter.
Section 44D(3) further instructs the awarding agency to evaluate each applicant:
on the basis of the applicant’s most recent prequalification statement and the application to bid, according to the procedures and criteria which the deputy commissioner shall prescribe by regulations or guidelines. Such criteria shall include the following: the record of the applicant’s performance including, where available, written evaluations of the applicant’s performance on public and private jobs over the past five years: the applicant's prior experience on projects of similar size and type; the experience and qualifications of the supervisory personnel who will have major responsibility for performance of the contract; the maximum amount of work the applicant is capable of undertaking . . .
Section 4.13(5) of 810 C.M.R. provides that:
The awarding authority shall consider the information contained in the update statement, which it may verify by its own investigation, and material that it may request from the Division . . . The awarding authority’s eligibility review of the low bidder shall concentrate on the bidder’s performance since its last certification by the Division, provided, however, that the awarding authority may bring information to the Division’s attention concerning a contractor’s qualifications, if the Division was not aware of that information when it certified the contractor.

 Indeed, the two torts are treated in the same manner and have essentially the same elements except for the need for a contract in the latter action. Geltman at 815, n.6.

 The court has made an exception for negligence actions involving an ongoing nuisance, but such is not the case in the present action.