Garsh, J.
Plaintiff, Seafood Services, Inc. ("Seafood”), has brought this action against the Town of Fairhaven (“Fairhaven”) in connection with the deterioration of property that is the subject of a commercial lease agreement. The complaint seeks damages for breach of contract, public and private nuisance, and breach of the implied covenant of quiet enjoyment, and it seeks declaratory relief regarding Fairhaven’s alleged obligations to make structural repairs. The case is presently before the court on Fairhaven’s motion for summary judgment. For the following reasons, the defendant’s motion is ALLOWED.
BACKGROUND
The following are the undisputed material facts:
On January 12, 1981, Fairhaven and Seafood entered into a lease agreement (the “Lease") for shorefront land and its attendant buildings, located at Union Wharf in Fairhaven, Massachusetts.[1] The Lease grants Seafood the exclusive right to operate a seafood processing and distribution business over three wa *266 terfront parcels Identified in the Lease as lots “A,” “B,” and “C," consisting of approximately 6330 square feet. Seafood owns 900 square feet of land that is situated between leased parcels A and B. The land owned by Seafood contains a two-story structure which forms one building integrated with the structures located on the parcels which it leases. The buildings’ mechanical and electrical systems are fully integrated.
Seafood has occupied the entire building and conducted a seafood processing and distribution business from that location throughout the duration of the Lease. During this time, the easterly portion of the building, together with its substructure, has deteriorated to the point that it is beyond ordinary repair; to be rendered usable, the structure located on leased parcel A must be demolished and rebuilt. The deterioration is the cumulative result of natural conditions and the ordinary wear and tear of the business operations run by Seafood since 1981 and that of its predecessor. The easterly building and its substructure pose a physical danger to individuals on parcel A.
Fairhaven is aware of the dangerous condition of the easterly building. The Town has refused to make any structural alterations, additions, or repairs on the leased property. Fairhaven also has refused to allow Seafood to make its own repairs unless Seafood agrees to release its right to seek reimbursement of repair expenditures from the Town or to litigate that reimbursement claim with the Town.
The Lease contains the following language:
[T]he said LESSOR does hereby lease unto the said LESSEE . . . the same area as Lot A on annexed plan . . .
The LESSEE acknowledges that said premises are in good order, repair and condition and Covenants during said term and such further time as the LESSEE holds any part of said premises;
MAINTENANCE 2. Damage by fire, unavoidable casualty or reasonable wear and tear excepted, at the LESSEE’S expense to keep said premises substantially in good order, repair and condition as the same are in at the commencement of said term, or may be put in thereafter, and to make any other repairs (but not alterations or additions) which the LESSEE may desire.
RIGHT TO VIEW 11. To permit the LESSOR and the LESSOR’S agents to examine the premises at reasonable times, and if the LESSOR shall so elect, to make any repairs or additions the LESSOR may deem necessary and at the LESSEE’S expense to remove any alterations, additions, signs . . .
DISCUSSION
Where, as here, there are no material issues of fact, the court may enter judgment as a matter of law. Mass.R.Civ.P. 56; Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
I. Breach of Contract
The terms of the Lease establish that Fairhaven is not obligated to demolish and reconstruct the deteriorated structure that is located on leased parcel A.[2] Seafood points to the fact that it, as lessee, is not obligated, under paragraph 2 of the Lease, to keep the premises “in good order, repair and condition” if the damage is the result of fire, unavoidable, casualty or reasonable wear and tear. However, the paragraph in the Lease which so relieves Seafood of its responsibility to demolish and rebuild the deteriorating structure is silent with respect to any obligation on the part of Fairhaven to do so.[3] Paragraph 11 of the Lease requires Seafood to allow Fairhaven access to the property in order to make repairs or additions that the Lessor “may deem necessary.” Nothing in that paragraph or elsewhere in the Lease requires the Lessor to make repairs, alterations, or reconstructions. The issue is not whether Seafood must tear down and reconstruct the structure at its own expense; it is whether it can require Fairhaven to do so. The terms of the Lease are such that if damage is the result of fire, casually, or, as here, reasonable wear and tear, the parties can “walk away from the lease with no penalty or liability to either side.” Memorandum of Decision and Order on Plaintiffs Motion for a Preliminary Injunction at 5 (Brassard, J.). See Carney v. Bereault, 348 Mass. 502, 508 (1965) (lease restricting tenant from making alterations or additions without consent of landlord did not shift obligation to make repairs from tenant to landlord).
Where a lease does not compel either of the parties to the agreement to demolish and reconstruct a deteriorating building, the law does not imply any such agreement into existence. The common law of landlord and tenant is predicated upon the concept that property subject to the lease is transferred from the landlord and into the control of the tenant. Conahan v. Fisher, 233 Mass. 234, 237 (1919). This transfer places control of the premises exclusively into the hands of the tenant and relieves the landlord of any obligation to repair. Id. Where the tenant has exclusive control of the premises, the law will not imply any duty upon the landlord to repair or, as here, to entirely rebuild a structure on the leased premises. The provision of the Lease which gives Fairhaven the right to view the premises at any reasonable time and to make such repairs that it may deem necessary does not translate into an obligation to reconstruct a structure deteriorating on leased premises. See Dubay v. Cambridge Housing Authority, 352 Mass. 770 (1967) (re-script) (reservation of the right to enter premises to make repairs, additions or alterations for the preser *267 vation of the building did not put lessor in control nor impose on lessor a duty to repair).
Courts consistently have declined to extend the rule governing residential lease agreements, pursuant to which a landlord may be liable for defects of which he had notice and reasonable opportunity to repair, Young v. Garwacki, 380 Mass. 162 (1980), to commercial transactions. See, e.g., Camerlin v. Marshall, 411 Mass. 394, 397 (1991); Chausse v. Coz, 405 Mass. 264, 266-67 (1989). Commercial leases generally are negotiated between parties not unsophisticated in such matters, and any duties assumed under the terms of the lease can be assumed to be the product of informed bargaining. Accordingly, commercial parties like Seafood are not entitled to the protections offered to presumably more inexperienced and financially constrained residential tenants. Camerlin, 411 Mass. at 397.
The plaintiff relies upon Sheehan v. ElJohnan, Inc., 38 Mass.App.Ct. 975 (1995) (rescript), in support of its contention that Fairhaven is required to reconstruct the structure on parcel A.
In the context of a lease for commercial purposes, a landlord has a duty to keep the premises in safe condition ... if (1) he has undertaken so to do under the terms of the lease or (2) the location of the defect . . . was in a common or other area appurtenant to the leased premises ‘over which the [landlord] had some control.
Id. In Sheehan, the court affirmed summary judgment in favor of the landlord because the parking lot, the location of the defect that caused injury, was not in a common or other area over which the landlord had some control. Id. The tenant in that case was the sole occupant of the leased premises. Id. at 976. Similarly here, Seafood is the sole occupant of parcel A, and nothing in this record supports an inference that the substructure, soil, and pilings under leased parcel A are within the control of Fairhaven. When the Lease transferred possession of the entirety of parcel A to the tenant Seafood, it operated to transfer the substructure, soil and pilings as well.[4] Conahan, 233 Mass. at 237 (landlord not responsible to repair balcony rendered defective, in part, because of rotting corner post of three story building). Nothing in the Lease purports to reserve control of any part parcel A to Fairhaven. The lack of retained control relieves Fairhaven of any obligation to repair. Id.
In sum, Seafood has failed to show that Fairhaven undertook in the Lease to rebuild deteriorating structures on parcel A and has failed to show that the location of the defect is in a common or other area over which Fairhaven has retained control. Consequently, Fairhaven is not liable for its failure to demolish and rebuild the deteriorating structure and is not required to do so at this time.
II. Nuisance
A.- Private Nuisance
Seafood also contends that Fairhaven’s failure to repair, or allow Seafood to repair, the easterly portion of the building constitutes a private nuisance. A town in its capacity as owner of land or a building is liable for a private nuisance in the same way as that of a natural person. Kurtigan v. Worcester, 348 Mass. 284, 288 (1965) “A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another." Doe v. New Bedford Housing Authority, 417 Mass. 273, 288 (1994) (emphasis in original). In order to establish a claim for private nuisance, the plaintiff must allege facts sufficient to demonstrate that there are two different parcels of property: one upon which the nuisance condition exists and another which is burdened by the nuisance. New Bedford Housing Authority, 417 Mass. at 288.
The record is sufficient to establish that a nuisance condition exists on parcel A in the sense that the building on leased parcel A has deteriorated to where it is a danger to persons who may be upon that parcel, and Seafood does own property which is adjacent to parcel A. However, the facts alleged by Seafood do no more than state that the building which covers all of the leased parcels, as well as the property owned by Seafood, is an integrated structure and that, as result of the dangerous condition in parcel A, Seafood has had to turn away business and is losing revenue. The mere fact that an integrated structure is present on both the leased and owned property is not enough to state an actionable claim of private nuisance since the deterioration of one portion of a structure making it unfit for reasonably safe use does not, by itself, give rise to an inference that the adjoining parcel has been unduly burdened. The record establishes only that Seafood is unable to use that portion of the building which is on parcel A; it does not establish any resulting inability to use the adjoining structure on the property owned by Seafood.
B. Public Nuisance
Seafood’s claim for public nuisance is predicated on the proposition that, as a matter of public policy, a municipality should not be permitted to allow its property to fall in a state of disrepair and that to do so constitutes actions which are intentional, unreasonable and reckless. An action to abate a public nuisance is intended to protect the public from unreasonable or illegal uses of property. See Chase v. Proprietors of Revere House, 232 Mass. 88, 92 (1919). Where, as here, there is no injury to the public at large, an action for public nuisance cannot lie. An action of public nuisance is particularly ill-suited to the plaintiffs allegations because whether the public is best served by expenditures of funds to repair leased property *268 owned by a town would require courts to engage in a cost benefit analysis more properly left to a city or town.[5]
III. Breach of Covenant of Quiet Enjoyment
“The covenant of quiet enjoyment protects a tenant’s right to freedom from serious interference with his tenancy — acts or omissions that impair the character and value of the leasehold.” New Bedford Housing Authority, 417 Mass. at 285. Failure to fulfill duties or obligations mandated in a lease agreement where the failure to do so deprives the lessee of a vital part of what the lessee needs in order to carry on its business constitutes a breach of the covenant of quiet enjoyment. Charles E. Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 127 (1959).
Given the court’s determination, as set forth above, that Fairhaven is not required to demolish and reconstruct the deteriorated structure on the leased premises, there has been no breach of the covenant of quiet enjoyment. Fairhaven did not cause the structure to deteriorate; it is undisputed that the deterioration is the result of years of wear and tear. The Lease should not be rewritten under the rubric of breach of the covenant of quiet enjoyment to create an obligation to completely reconstruct a leased structure that has deteriorated through no intervention of the lessor.
ORDER
For the foregoing reasons, the court ORDERS that the Defendant’s Motion for Summary Judgment be ALLOWED.

The Lease grants Seafood an option to extend the Lease for two successive ten-year periods: April 30, 1990 and then again on May 1, 2000. The first option was exercised by Seafood, and the present Lease runs through April 30, 2000.

This court rejects Fairhaven’s contention that the decision denying the plaintiff a preliminary injunction is the law of the case with regard to the responsibilities of the parties under the Lease, but agrees with the interpretation of the Lease set out in that decision.

Paragraph 4 of the Lease requires Seafood, at the termination of the Lease, to return the premises in as good a condition as they were in at the commencement of the Lease, “damage by fire, unavoidable casualty, or reasonable wear and tear excepted . . .”

Derman Rug Co. Inc. v. Ruderman, 4 Mass.App.Ct. 437 (1976), upon which the plaintiff relies, is not to the contrary. In that case, the Court stated that when a lease is executed for part of a building, pipes embedded in a basement floor would normally be deemed within the landlord’s exclusive control such that the landlord has the sole obligation to make repairs in the absence of an agreement to the contrary. Id. at 443. Here, Fairhaven has leased the entirety, not part, of parcel A. No facts are contained in the record that create a dispute as to the exclusivity of Seafood’s control. See also Griffith v. New EnglandTelephone, 420 Mass. 365, 368 (1995) (lessee has no obligation to maintain underground tanks where the manner in which the term “premises” is specifically defined does not encompass underground tanks).

Stop & Shop Companies, Inc. v. Fisher, 387 Mass. 889 (1983), held that a complaint stated a claim for public nuisance against a defendant whose negligence had damaged a bridge, thereby causing the plaintiff to lose a significant amount of business. “This was an obstruction of a public way, and as such constituted a public nuisance.” Id. at 894. Seafood’s alleged damage, by contrast, was not incurred by reason of the Town having damaged the leased parcel and the parcel, exclusively under the control of the plaintiff by virtue of the Lease, cannot be analogized to a public way.